# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

ANTHONY DAUNT,

*Plaintiff*,

v.

JOCELYN BENSON, in her official capacity as Michigan Secretary of State; JONATHAN BRATER, in his official capacity as Director of the Michigan Bureau of Elections; SHERYL GUY, in her official capacity as Antrim County Clerk; DAWN OLNEY, in her official capacity as Benzie County Clerk; CHERYL POTTER BROWE, in her official capacity as Charlevoix County Clerk; KAREN BREWSTER, in her official capacity as Cheboygan County Clerk; SUZANNE KANINE, in her official capacity as Emmet County Clerk; BONNIE SCHEELE, in her official capacity as Grand Traverse County Clerk; NANCY HUEBEL, in her official capacity as Iosco County Clerk; DEBORAH HILL, in her official capacity as Kalkaska County Clerk; JULIE A. CARLSON, in her official capacity as Keweenaw County Clerk; MICHELLE L. CROCKER, in her official capacity as Leelanau County Clerk; ELIZABETH HUNDLEY, in her official capacity as Livingston County Clerk; LORI JOHNSON, in her official capacity as Mackinac County Clerk; LISA BROWN, in her official capacity as Oakland County Clerk; SUSAN I. DEFEYTER, in her official capacity as Otsego County Clerk; MICHELLE STEVENSON, in her official capacity as Roscommon County Clerk; and LAWRENCE KESTENBAUM, in his official capacity as Washtenaw County Clerk,

*Defendants*.

**COMPLAINT**

Case No. 1:20-cv-522

Plaintiff, Anthony ("Tony") Daunt, brings this action under the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. §20507, against Defendants for declaratory and injunctive relief, and alleges as follows:

## INTRODUCTION

1.      Section 8 of the NVRA requires States to maintain clean and accurate voter registration records.

2.      For at least 16 of its counties, Michigan has failed to live up to this requirement.

3.      Leelanau County has more registered voters than it has adult citizens who are over the age of 18. That number of voters on the rolls is impossibly high.

4.      An additional 15 counties—Antrim, Benzie, Charlevoix, Cheboygan, Emmet, Grand Traverse, Iosco, Kalkaska, Keweenaw, Livingston, Mackinac, Oakland, Otsego, Roscommon, and Washtenaw—have voter registration rates that exceed 90 percent of adult citizens over the age of 18. That figure far eclipses the national and statewide voter registration rate in recent elections.

5.      Based on this and other evidence, Defendants are failing to make a reasonable effort to conduct appropriate list maintenance as required by the NVRA.

## JURISDICTION AND VENUE

6.      The Court has subject-matter jurisdiction because this case alleges violations of the NVRA. 28 U.S.C. §1331.

7.   Venue is proper because a substantial part of the events or omissions giving rise to the claims occurred in this District and because some Defendants "reside" here. 28 U.S.C. §1391.

## PARTIES

8.   Plaintiff, Tony Daunt, is a duly registered Michigan voter. Daunt regularly votes in Michigan's primary and general elections. He plans to vote in Michigan's November 2020 general election, including for U.S. President, U.S. Senate, and other offices and ballot measures on the ballot.

9.   Because Defendants do not maintain accurate voter rolls, Daunt reasonably fears that ineligible voters can and do vote in Michigan elections. Those votes will dilute his legitimate vote. And Michigan's inaccurate rolls undermine Daunt's confidence in the integrity of Michigan elections, which also burdens his right to vote.

10.   Daunt has long been an active member of the Republican Party. He works in Michigan to advance conservative policies and to help elect Republican candidates. Daunt has served, among other roles, as a field director for the College Republican National Committee and a logistics manager and director for the Michigan Republican Party. He is currently an officer and member of the governing body of the Clinton County Republican Party, a member of the governing body of the Michigan Republican Party Committee, and the executive director of the Michigan Freedom Fund.

11.   Because Defendants do not maintain accurate voter rolls, Daunt must spend more of his time and resources monitoring Michigan elections for fraud and

abuse, mobilizing voters to counteract it, educating the public about election-integrity issues, and persuading elected officials to improve list maintenance.

12.     Defendant Jocelyn Benson is Michigan's Secretary of State. She is the State's chief election officer, Mich. Comp. Laws Ann. §168.21, and is responsible for coordinating the statewide list maintenance required by the NVRA, 52 U.S.C. §20509. Secretary Benson is sued in her official capacity.

13.     Defendant Jonathan Brater is Michigan's Director of Elections. He is responsible for "perform[ing] the duties of the secretary of state under his or her supervision, with respect to the supervision and administration of the election laws." Mich. Comp. Laws Ann. §168.32. Director Brater is sued in his official capacity.

14.     Defendant Sheryl Guy is the Clerk of Antrim County. She is the county's chief election officer and plays a direct role in list maintenance. Clerk Guy is sued in her official capacity.

15.     Defendant Dawn Olney is the Clerk of Benzie County. She is the county's chief election officer and plays a direct role in list maintenance. Clerk Olney is sued in her official capacity.

16.     Defendant Cheryl Potter Browe is the Clerk of Charlevoix County. She is the county's chief election officer and plays a direct role in list maintenance. Clerk Browe is sued in her official capacity.

17.     Defendant Karen Brewster is the Clerk of Cheboygan County. She is the county's chief election officer and plays a direct role in list maintenance. Clerk Brewster is sued in her official capacity.

18.     Defendant Suzanne Kanine is the Clerk of Emmet County. She is the county's chief election officer and plays a direct role in list maintenance. Clerk Kanine is sued in her official capacity.

19.     Defendant Bonnie Scheele is the Clerk of Grand Traverse County. She is the county's chief election officer and plays a direct role in list maintenance. Clerk Scheele is sued in her official capacity.

20.     Defendant Nancy Huebel is the Clerk of Iosco County. She is the county's chief election officer and plays a direct role in list maintenance. Clerk Huebel is sued in her official capacity.

21.     Defendant Deborah Hill is the Clerk of Kalkaska County. She is the county's chief election officer and plays a direct role in list maintenance. Clerk Hill is sued in her official capacity.

22.     Defendant Julie A. Carlson is the Clerk of Keweenaw County. She is the county's chief election officer and plays a direct role in list maintenance. Clerk Carlson is sued in her official capacity.

23.     Defendant Michelle L. Crocker is the Clerk of Leelanau County. She is the county's chief election officer and plays a direct role in list maintenance. Clerk Crocker is sued in her official capacity.

24.     Defendant Elizabeth Hundley is the Clerk of Livingston County. She is the county's chief election officer and plays a direct role in list maintenance. Clerk Hundley is sued in her official capacity.

25.     Defendant Lori Johnston is the Clerk of Mackinac County. She is the county's chief election officer and plays a direct role in list maintenance. Clerk Johnston is sued in her official capacity.

26.     Defendant Lisa Brown is the Clerk of Oakland County. She is the county's chief election officer and plays a direct role in list maintenance. Clerk Brown is sued in her official capacity.

27.     Defendant Susan I. DeFeyter is the Clerk of Otsego County. She is the county's chief election officer and plays a direct role in list maintenance. Clerk DeFeyter is sued in her official capacity.

28.     Defendant Michelle Stevenson is the Clerk of Roscommon County. She is the county's chief election officer and plays a direct role in list maintenance. Clerk Stevenson is sued in her official capacity.

29.     Defendant Lawrence Kestenbaum is the Clerk of Washtenaw County. He is the county's chief election officer and plays a direct role in list maintenance. Clerk Kestenbaum is sued in his official capacity.

## BACKGROUND

### I.    Statutory Background

30.    Congress enacted the NVRA "to protect the integrity of the electoral process." 52 U.S.C. §20501(b)(3). Specifically, section 8 was enacted "to ensure that accurate and current voter registration rolls are maintained." §20501(b)(4).

31.    Retaining voter rolls bloated with ineligible voters harms the electoral process, heightens the risk of electoral fraud, and undermines public confidence in elections. "Confidence in the integrity of our electoral processes is," in turn, "essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006).

32.    Section 8 obligates States to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to death or change of residence. 52 U.S.C. §20507(a)(4). "[F]ederal law makes this removal mandatory." *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1842 (2018).

33.    Each State's program for maintaining voter-registration lists must be "uniform, non-discriminatory, and in compliance with the Voting Rights Act." 52 U.S.C. §20507(b)(1).

34.    Specifically, section 8 requires States to "remove the names of ineligible voters from the official lists of eligible voters by reason of (A) the death of the registrant;

or (B) a change in the residence of the registrant" to outside her current voting jurisdiction. 52 U.S.C. §20507(4)(A)-(B).

35.    The Help America Vote Act (HAVA) also mandates that states adopt computerized statewide voter registration lists and maintain them "on a regular basis" in accordance with the NVRA. 52 U.S.C. §21083(a)(2)(A).

36.    States must "ensure that voter registration records in the State are accurate and are updated regularly," an obligation that includes a "reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." 52 U.S.C. §21083(a)(4).

37.    HAVA's list-maintenance requirements include coordination with "State agency records on death" and "State agency records on felony status" to facilitate the removal of individuals who are deceased or rendered ineligible under state law due to a felony conviction. 52 U.S.C. §21083(a)(2)(A)(ii)(I)-(II).

38.    According to the bipartisan Carter-Baker Commission, "registration lists lie at the root of most problems encountered in U.S. elections." Inaccurate voter rolls that contain "ineligible, duplicate, fictional, or deceased voters" invite "fraud." "While election fraud is difficult to measure" (because many cases go undetected, uninvestigated, or unprosecuted), "it occurs." "In close or disputed elections, and there are many, a small amount of fraud could make the margin of difference." And "the perception of possible fraud contributes to low confidence in the system." The

Supreme Court agrees. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 197 (2008) (op. of Stevens, J.).

39.     Recognizing these concerns, the NVRA includes a private right of action. It empowers any "person who is aggrieved by a violation" to "provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. §20510(b)(1). "If the violation is not corrected within 90 days after receipt of a notice, … the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief." §20510(b)(2).

## II.     Defendants' Obligations

40.     Federal law makes Michigan's Secretary of State primarily responsible for list maintenance.

41.     The NVRA requires each State to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under" the law. 52 U.S.C. §20509.

42.     Michigan law designates the Secretary of State as the State's chief election officer. Mich. Comp. Laws Ann. §168.21. It further instructs the Director of Elections to "perform the duties of the secretary of state under his or her supervision, with respect to the supervision and administration of the election laws." §168.32.

43.     County clerks also bear list-maintenance responsibilities, serving as the chief election official for each county.

44. Michigan law provides that "at least once a month, the county clerk shall forward a list of the last known address and birthdate of all persons over 18 years of age who have died within the county to the clerk of each city or township within the county." Mich. Comp. Laws Ann. §168.510. Then, "[t]he city or township clerk shall compare this list with the registration records and cancel the registration of all deceased electors." *Id.*

45. Many county clerks maintain voter registrations directly.

46. Ultimate responsibility for coordinating and overseeing all list-maintenance activities rests with the Secretary. A chief election official "may not delegate the responsibility to conduct a general program to a local official and thereby avoid responsibility if such a program is not reasonably conducted." *United States v. Missouri*, 535 F.3d 844, 850 (8th Cir. 2008).

47. Indeed, "the NVRA's centralization of responsibility counsels against ... buck passing." *Scott v. Schedler*, 771 F.3d 831, 839 (5th Cir. 2014). Courts have rejected the view that, "once the state designates" a local entity to assist with complying with federal law, "her responsibility ends." *Harkless v. Brunner*, 545 F.3d 445, 452 (6th Cir. 2008). "[I]f every state passed legislation delegating" their responsibilities "to local authorities, the fifty states would be completely insulated from any enforcement burdens." *Id.*

**III.    Defendants' Failure to Meet Their List-Maintenance Obligations**

48.    An estimated "24 million voter registrations in the United States—about one in eight—are either invalid or significantly inaccurate." *Husted*, 138 S. Ct. at 1838. Michigan is no exception.

49.    Based on data gathered from the U.S. Census Bureau's 2014-18 American Community Survey and the most up-to-date count of registered voters available from the Secretary of State's office, one Michigan county has more registered voters than voting-eligible citizens, and 15 others have suspiciously high rates of voter registration. Thus, Michigan is failing to meet its list-maintenance obligations.

50.    Comparing the registered voter count to the 2014-18 American Community Survey reveals that Leelanau County has a registration rate of 102%. In other words, there are more registered voters than eligible voters.

51.    Additionally, 15 other counties across the State purport to have more than 90% (in some cases, approaching 100%) of their citizen voting-age populations registered to vote: Antrim (97.5%), Benzie (97.2%), Charlevoix (94.4%), Cheboygan (90.2%), Emmet (97.2%), Grand Traverse (95.3%), Iosco (90.4%), Kalkaska (93.5%), Keweenaw (92.1%), Livingston (93.5%), Mackinac (92.3%), Oakland (92.7%), Otsego (93.6%), Roscommon (91.2%), and Washtenaw (91.1%).

52.    These voter registration rates are abnormally—or in the case of Leelanau, impossibly—high.

53.     According to the U.S. Census Bureau, 66.9% of the citizen voting-age population was registered nationwide in the November 2018 election.

54.     Similarly, 70.3% of the citizen voting-age population was registered in the November 2016 election.

55.     The U.S. Census Bureau further reports Michigan's statewide voter registration rates for the 2018 and 2016 elections as 73.4% and 74.1% of the citizen voting-age population, respectively.

56.     Thus, these 16 counties are significant outliers, touting voter registration rates 20 to 30 percentage points higher than the national figures from 2018 and 2016, and 15 to 25 percentage points higher than the state figures for the same period.

57.     There is no evidence that these counties experienced above-average voter participation compared to the rest of the country or State. Instead, the only plausible explanation for these discrepancies is substandard list maintenance.

58.     "[S]ignificantly high registration rates," like these, are a telltale sign that clerks are "not properly implementing a program to maintain an accurate and current voter registration roll, in violation of the NVRA." *Am. Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 791 (W.D. Tex. 2015).

59.     For example, the United States sued Indiana for violating the NVRA in 2006, noting in its complaint that "25 counties had registration totals of 90-95%" of their voting-age population. Indiana quickly confessed to violating the NVRA in a consent decree.

60.     Judicial Watch and True the Vote sued Indiana in 2012, explaining in their complaint that "26 counties … have voter registration rolls that contain between 90% and 100% of TVAP." Indiana agreed to conduct a significant, statewide process to clean up its voter rolls.

61.     Also in 2012, Judicial Watch and True the Vote sued Ohio under the NVRA, alleging that "thirty-one counties … have voter registration rolls that contain between 90% and 100% of total voting age population." Ohio agreed to implement heightened review of the accuracy of its voter rolls.

62.     Michigan itself has identified problems with list maintenance in the State.

63.     Officials admit that Michigan law does not require clerks, when conducting list maintenance, to use information from the U.S. Postal Service's National Change of Address system.

64.     The Qualified Voter File was created to maintain the accuracy of Michigan's voter rolls, but it "does not track automatically" critical information including many "[d]uplicate registrations," "[i]nvalid or rejected applications," "[c]onfirmation cards returned," or "[r]esult[s] of returned confirmation card." While this information can be entered manually, an internal "review" revealed that "information isn't always being entered into QVF properly."

65.     Defendants' failure to maintain accurate voter rolls violates federal law and jeopardizes the integrity of the upcoming 2020 election.

## IV.    Plaintiff's Statutory Notice

66.    Under the NVRA, "Plaintiffs have [statutory] standing assuming they provided proper notice within the meaning of 52 U.S.C. §20510(b)(1)." *Bellitto v. Snipes*, 221 F. Supp. 3d 1354, 1362 (S.D. Fla. 2016).

67.    On February 26, 2020, Daunt mailed a statutory notice letter to Secretary Benson and Director Brater, notifying them that 19 Michigan counties were in violation of section 8 and formally requesting that Defendants correct these violations within the 90-day timeframe specified in federal law.

68.    Daunt has since received updated comparisons based on recently available data, revealing that 16 Michigan counties are in violation of section 8. Those numbers are reflected above.

69.    The notice letter stated that Daunt "hope[d] to avoid litigation and would welcome immediate efforts by [Defendants] to bring Michigan into compliance with Section 8."

70.    Daunt asked the Secretary and Director to "establish, if one has not already been initiated, a comprehensive and nondiscriminatory list maintenance program in compliance with federal law" and to "identify and remove [several] categories of individuals from the official lists of eligible voters."

71.    Daunt asked that the Secretary and Director "respond in writing within 45 days of the date of this letter," "fully describ[ing] the efforts, policies, and programs [Defendants] are taking, or plan to undertake prior to the 2020 general election to bring

Michigan into compliance with Section 8" and "not[ing] when [they] plan to begin and complete each specified measure and the results of any programs or activities you have already undertaken."

72.     Additionally, Daunt requested that the Secretary and Director advise him "what policies are presently in place, or will be put in place, to ensure effective and routine coordination of list maintenance activities with the federal, state, and local entities" and to provide him with "a description of the specific steps [they] intend to take to ensure routine and effective list maintenance on a continuing basis beyond the 2020 election.

73.     Daunt also requested that all Defendants take steps to preserve documents as required by section 8(i) of the NVRA, 52 U.S.C. §20507(i)(1)-(2), and other federal law. *See e.g.*, *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 963 (S.D. Tex. 2010) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.").

74.     Finally, the notice letter stated that Daunt would file a lawsuit under 52 U.S.C. §20510(b)(2) if the identified violations were not corrected within 90 days of receipt of his letter.

75.     Defendants failed to respond to the notice letter.

## COUNT
### Violation of the NVRA

76.     Plaintiff repeats and realleges each of the prior allegations in this complaint.

77.     Defendants have failed to make reasonable efforts to conduct voter list-maintenance as required by §20507(a)(4) of the NVRA.

78.     Plaintiff has suffered irreparable injuries as a direct result of Defendants' violation of section 8 of the NVRA.

79.     Plaintiff will continue to be injured by Defendants' violations of section 8 of the NVRA until Defendants are enjoined from violating the law.

80.     Plaintiff has no adequate remedy at law.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants and provide the following relief:

A.      A declaratory judgment that Defendants are in violation of section 8 of the NVRA;

B.      A permanent injunction barring Defendants from violating section 8 of the NVRA;

C.      A preliminary injunction ensuring that Defendants' failures to comply with section 8 of the NVRA are cured prior to the 2020 general election.

D.      A preliminary injunction compelling Defendants to preserve all election list-maintenance records requested by Plaintiff;

E.      An order instructing Defendants to develop and implement reasonable and effective registration list-maintenance programs to cure their failure to comply with section 8 of the NVRA and to ensure that ineligible registrants are not on the voter rolls;

F.     Plaintiff's reasonable costs and expenses of this action, including
       attorneys' fees; and

G.     All other further relief that Plaintiff may be entitled to.

                        Respectfully submitted,

Dated: June 9, 2020          _/s/ Cameron T. Norris____
                        William S. Consovoy
                        Cameron T. Norris
                        Tiffany H. Bates
                        CONSOVOY MCCARTHY PLLC
                        1600 Wilson Blvd., Ste. 700
                        Arlington, VA 22209
                        will@consovoymccarthy.com
                        cam@consovoymccarthy.com
                        tiffany@consovoymccarthy.com

                        Jason Torchinsky (application for
                        admission forthcoming)
                        HOLTZMAN VOGEL
                           JOSEFIAK TORCHINSKY PLLC
                        45 North Hill Drive, Ste. 100
                        Warrenton, VA 20186
                        (540) 341-8800
                        JTorchinsky@hvjt.law

                        *Counsel for Plaintiff*