UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

ANTHONY DAUNT,

          Plaintiff,

v.

JOCELYN BENSON, in her official capacity as
Michigan Secretary of State; JONATHAN BRATER,
in his official capacity as Director of the Michigan
Bureau of Elections; SHERYL GUY, in her official
capacity as Antrim County Clerk; DAWN OLNEY, in
her official capacity as Benzie County Clerk; CHERYL
POTTER BROWE, in her official capacity as
Charlevoix County Clerk; KAREN BREWSTER, in her
official capacity as Cheboygan County Clerk;
SUZANNE KANINE, in her official capacity as
Emmet County Clerk; BONNIE SCHEELE, in her
official capacity as Grand Traverse County Clerk;
NANCY HUEBEL, in her official capacity as Iosco
County Clerk; DEBORAH HILL, in her official
capacity as Kalkaska County Clerk; JULIE A.
CARLSON, in her official capacity as Keweenaw
County Clerk; MICHELLE L. CROCKER, in her
official capacity as Leelanau County Clerk;
ELIZABETH HUNDLEY, in her official capacity as
Livingston County Clerk; LORI JOHNSON, in her
official capacity as Mackinac County Clerk; LISA
BROWN, in her official capacity as Oakland County
Clerk; SUSAN I. DEFEYTER, in her official capacity
as Otsego County Clerk; MICHELLE STEVENSON,
in her official capacity as Roscommon County Clerk;
and LAWRENCE KESTENBAUM, in his official
capacity as Washtenaw County Clerk,

          Defendants.

Case No. 1:20-cv-522
Hon. Robert J. Jonker
Mag. Judge Ray S. Kent

**MOTION TO INTERVENE BY NON-PARTIES LEAGUE OF WOMEN VOTERS OF
MICHIGAN, LEAGUE OF WOMEN VOTERS OF GRAND TRAVERSE AREA,
LEAGUE OF WOMEN VOTERS OF ANN ARBOR AREA, LEAGUE OF WOMEN
VOTERS OF LEELANAU COUNTY, LEAGUE OF WOMEN VOTERS OF COPPER
COUNTRY, AND LEAGUE OF WOMEN VOTERS OF OAKLAND AREA**

## THE LEAGUE'S MOTION TO INTERVENE

The League of Women Voters of Michigan, League of Women Voters of Grand Traverse Area, League of Women Voters of Ann Arbor Area, League of Women Voters of Leelanau County, League of Women Voters of Copper Country, and League of Women Voters of Oakland Area (the "League"), by and through the undersigned counsel, respectfully request that they be permitted to intervene as defendants in this action pursuant to Federal Rule of Civil Procedure 24.  The League seeks to intervene as of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, permissively under Federal Rule of Civil Procedure 24(b).

WHEREFORE, the League respectfully requests that the Court grant this Motion and allow the League to intervene as defendants in this matter.


Dated:   September 14, 2020

Respectfully submitted,

BUTZEL LONG

/s/ George B. Donnini
George B. Donnini (P66793)
David F. DuMouchel (P25658)
41000 Woodward Avenue
Stoneridge West Bldg.
Bloomfield Hills, MI  48304
Telephone:    313.225.7004
donnini@butzel.com
dumouchd@butzel.com

BRENNAN CENTER FOR JUSTICE AT NYU
SCHOOL OF LAW

Myrna Pérez (N.Y. Bar No. 4874095)*
Eliza Sweren-Becker (N.Y. Bar No. 5424403)*
Maximillian L. Feldman (N.Y. Bar No. 5237276)*
120 Broadway, Suite 1750
New York, NY 10271

Telephone:  646.292.8310
Facsimile:  212.463.7308
perezm@brennan.law.nyu.edu
sweren-beckere@brennan.law.nyu.edu
feldmanm@brennan.law.nyu.edu


PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Robert A. Atkins (N.Y. Bar No. 2210771)*
William B. Michael (N.Y. Bar No. 4296356)*
Farrah R. Berse (N.Y. Bar No. 4129706)*
Joshua D. Kaye (N.Y. Bar No. 4577219)*
Zack G. Goldberg (N.Y. Bar No. 5579644)*
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:   212.373.3000
Facsimile:    212.757.3990
ratkins@paulweiss.com
wmichael@paulweiss.com
fberse@paulweiss.com
jkaye@paulweiss.com
zgoldberg@paulweiss.com


*Attorneys for Proposed
Intervenor-Defendants*

*Application for admission forthcoming*

## <u>CERTIFICATE OF SERVICE</u>

I, George B. Donnini, certify that on September 14, 2020, I caused a true and correct copy of the foregoing document to be filed and served electronically via the ECF system.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

Respectfully submitted,

BUTZEL LONG

/s/ George B. Donnini
George B. Donnini (P66793)
41000 Woodward Avenue
Stoneridge West Bldg.
Bloomfield Hills, MI  48304
Telephone:    313.225.7004
donnini@butzel.com

*Counsel for Proposed*
*Intervenor-Defendants*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

ANTHONY DAUNT,

        Plaintiff,

v.

JOCELYN BENSON, in her official capacity as
Michigan Secretary of State; JONATHAN BRATER,
in his official capacity as Director of the Michigan
Bureau of Elections; SHERYL GUY, in her official
capacity as Antrim County Clerk; DAWN OLNEY, in
her official capacity as Benzie County Clerk; CHERYL
POTTER BROWE, in her official capacity as
Charlevoix County Clerk; KAREN BREWSTER, in her
official capacity as Cheboygan County Clerk;
SUZANNE KANINE, in her official capacity as
Emmet County Clerk; BONNIE SCHEELE, in her
official capacity as Grand Traverse County Clerk;
NANCY HUEBEL, in her official capacity as Iosco
County Clerk; DEBORAH HILL, in her official
capacity as Kalkaska County Clerk; JULIE A.
CARLSON, in her official capacity as Keweenaw
County Clerk; MICHELLE L. CROCKER, in her
official capacity as Leelanau County Clerk;
ELIZABETH HUNDLEY, in her official capacity as
Livingston County Clerk; LORI JOHNSON, in her
official capacity as Mackinac County Clerk; LISA
BROWN, in her official capacity as Oakland County
Clerk; SUSAN I. DEFEYTER, in her official capacity
as Otsego County Clerk; MICHELLE STEVENSON,
in her official capacity as Roscommon County Clerk;
and LAWRENCE KESTENBAUM, in his official
capacity as Washtenaw County Clerk,

        Defendants.

Case No. 1:20-cv-522
Hon. Robert J. Jonker
Mag. Judge Ray S. Kent

**BRIEF IN SUPPORT OF MOTION TO INTERVENE BY NON-PARTIES
LEAGUE OF WOMEN VOTERS OF MICHIGAN, LEAGUE OF WOMEN VOTERS OF
GRAND TRAVERSE AREA, LEAGUE OF WOMEN VOTERS OF ANN ARBOR AREA,
LEAGUE OF WOMEN VOTERS OF LEELANAU COUNTY, LEAGUE OF WOMEN
VOTERS OF COPPER COUNTRY, AND LEAGUE OF WOMEN VOTERS OF
OAKLAND AREA**

## <u>TABLE OF CONTENTS</u>

**Page**

CONCISE STATEMENT............................................................................................1

INTRODUCTION ....................................................................................................1

BACKGROUND .....................................................................................................4

ARGUMENT ..........................................................................................................6

I.     THE COURT SHOULD GRANT INTERVENTION AS OF RIGHT
UNDER RULE 24(A)........................................................................................ 6

     A.     The League's Motion is Timely................................................................ 7

     B.     The League Has a Substantial Legal Interest in the Case....................... 9

     C.     The League's Ability to Protect Its Interests Will Be Impaired
Absent Intervention.............................................................................. 11

     D.     Defendants Inadequately Represent the League's Interest ................... 12

II.     IN THE ALTERNATIVE, THE COURT SHOULD GRANT
PERMISSIVE INTERVENTION UNDER RULE 24(B) ............................................. 13

CONCLUSION......................................................................................................14

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*American Beverage Assoc.* v. *Snyder*,
  No. 1:11-cv-195, 2011 WL 13128662 (W.D. Mich. Apr. 26, 2011) ........................................8

*Anderson* v. *Celebrezze*,
  460 U.S. 780 (1983) ...............................................................................................................9

*Bellitto* v. *Snipes*,
  No. 16-CV-61474-BLOOM/Valle, 2016 WL 5118568 (S.D. Fla. Sept. 21, 2016) ................10

*Bradley* v. *Milliken*,
  828 F.2d 1186 (6th Cir. 1987) ................................................................................................9

*Burdick* v. *Takushi*,
  504 U.S. 428 (1992) ................................................................................................................9

*City of St. Louis* v. *Velsicol Chem. Corp.*,
  708 F. Supp. 2d 632 (E.D. Mich. 2010) ..................................................................................7

*Daunt* v. *Benson*,
  No. 1:19-cv-00614 (W.D. Mich. Aug. 28, 2019) ...............................................................7, 12

*Grutter* v. *Bollinger*,
  188 F.3d 394 (6th Cir. 1999) ..............................................................................................9, 12

*Hertel* v. *Mortg. Elec. Registration Sys., Inc.*,
  No. 1:12-cv-174, 2012 WL 6596142 (W.D. Mich. Dec. 18, 2012) ........................................7

*Hill* v. *Travelers Cas. & Sur. Co.*
  No. 14-12840, 2015 WL 3440871 (E.D. Mich. May 28, 2015) ..............................................8

*Kirsch* v. *Dean*,
  733 Fed. App'x 268 (6th Cir. 2018) ........................................................................................7

*Kobach* v. *U.S. Election Assistance Com'n*,
  No. 13-cv-4095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) .........................................10, 13

*United States* v. *Kurdziel Iron Indust.*,
  No. 1:87-cv-394, 1991 WL 239992 (W.D. Mich. Oct. 16, 1991) ...........................................9

*League of Women Voters of Michigan* v. *Johnson*,
  902 F.3d 572 (6th Cir. 2018) ..............................................................................................1, 13

*Meyer Goldberg, Inc. of Lorain* v. *Goldberg*,
  717 F.2d 290 (6th Cir. 1983) .................................................................................................13

ii

*United States* v. *Michigan*,
   424 F.3d 438 (6th Cir. 2005) .............................................................14

*Michigan State AFL-CIO* v. *Miller*,
   103 F.3d 1240 (6th Cir. 1997) .................................................... passim

*Public Interest Legal Foundation, Inc.* v. *Winfrey*,
   No. 19-13638, 2020 WL 2781826 (E.D. Mich. May 28, 2020) ..................................... passim

*Purnell* v. *City of Akron*,
   925 F.2d 941 (6th Cir. 1991) .............................................................9

## STATUTES

52 U.S.C. § 20501 ...............................................................................2

52 U.S.C. § 20507(a)(4) ....................................................................2, 4

52 U.S.C. § 20507(c)(2)(A) ................................................................3

Mich. Comp. Laws § 168.510 ............................................................4

## OTHER AUTHORITIES

Fed. R.Civ. P. 24(a) ...................................................................1, 6, 11

Fed. R. Civ. P. 24(b) .......................................................................1

Local Civil Rule 7.1(a) ....................................................................1

Honest Elections Project, *Honest Elections Project Files Lawsuit Against The State Of
   Michigan To Compel It To Clean Up Its Voter Rolls* (June 9, 2020),
   https://www.honestelections.org/news/honest-elections-project-files-lawsuit-
   against-the-state-of-michigan-to-compel-it-to-clean-up-its-voter-rolls/.................................12

## CONCISE STATEMENT

Pursuant to Local Civil Rule 7.1(a), the League of Women Voters of Michigan, League of Women Voters of Grand Traverse Area, League of Women Voters of Ann Arbor Area, League of Women Voters of Leelanau County, League of Women Voters of Copper Country, and League of Women Voters of Oakland Area (collectively, the "League") state that intervention should be granted as of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, permissively under Federal Rule of Civil Procedure 24(b). The League has satisfied the requirements for intervention by right because its Motion is timely, it has a substantial interest in the case, its ability to protect its interests will be impaired absent intervention, and Defendants inadequately represent the League's interests. *See Michigan State AFL-CIO* v. *Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). Alternatively, the League has satisfied the requirements for permissive intervention because its Motion is timely and because it presents a defense that shares common questions of law and fact with the main action. *See League of Women Voters of Michigan* v. *Johnson*, 902 F.3d 572, 577 (6th Cir. 2018). Allowing the League to intervene will not result in undue delay or prejudice to the original parties. *See* Fed. R. Civ. P. 24(b)(3). Instead, the League will offer its expertise as an organization devoted to increasing the electoral participation of Michiganders, and to ensuring that "no unreasonable measures are adopted that could pose an elevated risk of removal of legitimate registrations" from the voter rolls, which other courts have recognized "is a facially legitimate interest and one that is sufficiently distinct from the interests of" elections officials. *Public Interest Legal Foundation, Inc.* v. *Winfrey*, No. 19-13638, 2020 WL 2781826, at *3 (E.D. Mich. May 28, 2020).

## INTRODUCTION

This is a case about the right to register and vote, a matter central to the League's purpose, mission, and voter registration activities. The League, a nonprofit, community-based

group, has spent the last century promoting and protecting that right by educating, assisting, and registering voters throughout Michigan.  That mission would be directly and negatively impacted were Plaintiff Anthony Daunt ("Daunt") successful in compelling Defendants to purge their voter rolls in a manner beyond what federal law requires.

The National Voter Registration Act ("NVRA")—a law intended to "*increase* the number of eligible citizens who register to vote" and to "protect the integrity of the electoral process"—requires "a *reasonable* effort to remove the names of ineligible voters."  52 U.S.C. § 20501; 52 U.S.C. § 20507(a)(4) (emphases added).  The law does not require that election administrators divert scarce resources into fact-checking unsubstantiated and unsolicited assertions presented by third parties.  Nor does the law require perfect voter rolls.  If Plaintiff were to succeed in pressuring election administrators into an unnecessary purge, however, it would affect both eligible *and* ineligible voters, and would require the League to commit further time, resources, and personnel to ensuring that every resident entitled to vote has the opportunity to cast their ballot.

The Court should allow intervention for the League to defend its interests against such real and imminent harm.  This lawsuit strikes at the heart of the League's mission to promote active participation in government through voting.  In particular, Plaintiff's attempt to force Defendants to unnecessarily purge their rolls based on entirely speculative allegations of potential voter fraud threatens to impair the League's substantial legal interest in ensuring that every registered eligible voter in Michigan remains registered and able to exercise his or her constitutional right to vote.  At a minimum, the League would be required to expend its limited resources on new education, registration (or re-registration), and election protection efforts to respond to such a purge in order to try to prevent or mitigate the very real risk that Michiganders,

2

including members of the League, will be disenfranchised.  These additional burdens would strain the League's limited resources.

This would constitute a clear, adverse impact on the League that is distinct from the burdens borne by Defendants.  Defendants are focused on litigating and complying with the legal standard established or identified by the Court, and on resolving this action so that they can get back to their other business, election-related and otherwise.  By contrast, the League is focused on preventing (or at least mitigating) the threat to the franchise posed by the unreasonable standard that Plaintiff seeks to impose on Michigan election administrators and by the proposed deregistration of Michigan voters.  Indeed, the primary purpose of the League—which has a century of experience and expertise in voter education, registration, and proper list maintenance practices—is to protect Michigan voters.  Absent the League, any resolution (whether in the form of an injunction, judgment, or settlement) may not take into account all the interests of the voters of the State, whose franchise the League is dedicated to protecting.

The timing of this litigation makes intervention by the League particularly important. There is a national election in less than two months, and Plaintiff's Complaint seeks "[a] preliminary injunction ensuring that Defendants' failures to comply with section 8 of the NVRA are cured prior to the 2020 general election."  ECF No. 1, PageID.16.  This raises the stakes of the litigation because Defendants may not conduct systematic voter purges within 90 days of a federal election—the preliminary relief Plaintiff seeks is now strictly prohibited by the NVRA's plain text.  *See* 52 U.S.C. § 20507(c)(2)(A).  Moreover, if Defendants purged voters after November 3, 2020 in the unreasonable manner that Plaintiff demands, eligible voters are likely to be removed, and the League will be burdened by having to educate Michigan voters about the purge, and attempting to identify and re-register improperly deregistered, eligible voters.  This

would be a huge task, exacerbated by the fact that many properly registered voters likely would not know that they had been deregistered.[1]

Courts have regularly granted motions to intervene in cases like the instant dispute. Indeed, earlier this year, the League was granted intervention in a nearly identical case filed in the Eastern District of Michigan.  In *Public Interest Legal Foundation, Inc.* v. *Winfrey*, the Michigan and Detroit Leagues moved to intervene in an action brought against Detroit election officials "seeking to compel the City to undertake more aggressive measures to purge its voter rolls of allegedly ineligible voters."  No. 19-13639, 2020 WL 2781826, at *1 (E.D. Mich. May 28, 2020).  There, the League sought "to intervene for the purpose of challenging the plaintiff's claims with a view toward ensuring that no unreasonable measures are adopted that could pose an elevated risk of removal of legitimate registrations," which the court determined was "a facially legitimate interest and one that is sufficiently distinct from the interests of the municipal defendants."  *Id*. at *3.  The court granted the League's motion to intervene, *id*. at *7, and plaintiff voluntarily dismissed the action with prejudice a month later.  No. 19-13639, ECF No. 57, PageID.944.  The League should be permitted to intervene in the instant suit for the same reasons as intervention was granted in *Winfrey*.  *See* 2020 WL 2781826.

## BACKGROUND

The League of Women Voters of Michigan is a nonpartisan community-based statewide organization formed in April 1919 after Michigan voters granted women suffrage in November 1918.  The League is affiliated with the League of Women Voters of the United States, which was founded in 1920.  The League is dedicated to encouraging its members and the people of

---

[1]     Neither the NVRA nor Michigan law, for example, requires notice to a voter before the cancellation of their registration on the basis of their purported death. *See* 52 U.S.C. § 20507(a)(4); Mich. Comp. Laws § 168.510.

Michigan to exercise their right to vote as protected by the federal Constitution, Michigan Constitution, and federal and state law.  The mission of the League is to empower voters and defend democracy.  The League promotes political responsibility through informed and active participation in government and through action on selected governmental issues.  The League impacts public policies, promotes citizen education, and makes democracy work by, among other things, removing unnecessary barriers to full participation in the electoral process.

Currently, the Michigan statewide League has 27 local leagues and over 2,400 members. The League has members in almost every county in the State, including Democrats, Republicans and independents.  Of particular relevance to this motion, the League leads voter registration drives, distributes information about the electoral process, promotes electoral laws and practices that encourage voter participation, partners with local organizations to host events on voting rights and other public policy issues, and conducts election protection on election days, among other activities.

Like the Michigan League, the Local Leagues for the Grand Traverse Area, Ann Arbor Area, Leelanau County, Copper Country, and Oakland Area are nonpartisan political organizations that encourage informed and active participation in government.  The Local Leagues influence public policy through education and advocacy, as well as through voter services, including voter registration drives and election protection.  The Local Leagues hold voter registration drives throughout their respective Michigan regions.  They also provide voter information to ensure that voters know their rights and to remove barriers to electoral participation.

As a strong proponent of registration reform and a major sponsor of voter assistance and registration efforts, the League has a unique interest in protecting against the deregistration of

eligible voters that would follow if Plaintiff succeeds in this action.  If Defendants are compelled to execute the voter purges Plaintiff demands, the burden of voter education and re-registration to remedy the disenfranchisement that would follow would be borne largely by the League. Moreover, if Plaintiff were to succeed in requiring Defendants to adopt unreasonable and aggressive purge standards—including as a result of any settlement Defendants may reach to avoid protracted litigation—based on nothing but rank speculation of voter fraud and "suspiciously high rates of voter registration," (ECF No. 1, PageID.11), the League will bear the burden of preventing Plaintiff and similarly motivated litigants from wreaking havoc on election administration in other counties across Michigan.  Defendants also may face political and/or financial pressures to resolve this case short of an adjudication of the merits that may not fully consider, address, and remedy all the harms to the voters of Michigan more broadly—in particular, the harms associated with the threat of disenfranchisement as well as the burdens of re-registration for those citizens improperly swept up in the purges Plaintiff seeks.  Defendants, therefore, may not adequately represent those voters that the League works hard to register, assist, and engage in the electoral system.

## **ARGUMENT**

## I. **THE COURT SHOULD GRANT INTERVENTION AS OF RIGHT UNDER RULE 24(A)**

A non-party has a right to intervene in an action where:  (1) the application to intervene is timely; (2) the applicant has a substantial legal interest in the subject matter of the pending litigation; (3) the applicant's ability to protect that interest in the absence of intervention may be impaired by disposition of the action; and (4) the parties already before the court do not adequately represent that interest.  Fed. R. Civ. P. 24(a)(2); *Mich. State AFL-CIO*, 103 F.3d at 1245.  The League satisfies each of these elements.

6

A.   **The League's Motion is Timely**

The League's motion is timely.  Courts "evaluate timeliness in the context of all relevant circumstances and consider the following five factors" in determining whether a motion to intervene is timely:  (1) the stage of the litigation; (2) the purpose for which intervention is sought; (3) the length of time preceding the motion during which the potential intervenors knew or should have known of their interest in the litigation; (4) the prejudice to the original parties due to the potential intervenors' failure to promptly move to intervene; and (5) the existence of unique circumstances militating against or in favor of intervention.  *Kirsch* v. *Dean*, 733 Fed. App'x 268, 274–75 (6th Cir. 2018) (citing *Jansen* v. *City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)).

Applying these factors, the League's motion is timely.  First, this case is in the nascent stage of litigation.  The initial complaint was filed on June 9, 2020 and the Secretary of State and Director of Elections filed a motion to dismiss on September 14, 2020.  The 16 county clerks will not file responsive pleadings until September 30, 2020.  The initial scheduling conference is not scheduled until October 27, 2020, no discovery has been undertaken, and no trial date has been set.  Given the early stage of the proceedings, this factor weighs in favor of finding the proposed intervention timely.  *See Winfrey*, 2020 WL 2781826, at *3 (finding the League's motion to intervene timely when filed two months after case commenced); *Daunt* v. *Benson*, No. 1:19-cv-00614, ECF No. 23, PageID.264 (W.D. Mich. Aug. 28, 2019) (finding motion to intervene timely given "early stage of the case"); *Hertel* v. *Mortg. Elec. Registration Sys., Inc.*, No. 1:12-cv-174, 2012 WL 6596142, at *2 (W.D. Mich. Dec. 18, 2012); *City of St. Louis* v. *Velsicol Chem. Corp.*, 708 F. Supp. 2d 632, 666 (E.D. Mich. 2010).

Second, the purpose for which intervention is sought is to ensure that eligible registered voters either remain registered or have an opportunity to register without fear of removal for

insubstantial reasons.  Intervention will ensure that voters who seek to remain on the rolls and exercise their constitutional right to vote in this election and future elections will be fully represented.  Thus, the League seeks to intervene for the proper purpose of protecting the voting rights of Michigan citizens.  *See Winfrey*, 2020 WL 2781826, at *3 (finding League's purpose for intervention of preventing adoption of "unreasonable" list maintenance measures to be "facially legitimate").  The national 2020 elections will be held in less than two months.  If Plaintiff is able to force an aggressive purge in contravention of the 90-day quiet period, the League may not have sufficient time to remedy the issue, either through additional efforts to educate and re-register voters or through further litigation.

Third, the League expeditiously acted to intervene in this recently commenced action. The action was commenced roughly three months ago, and the League moved to intervene on the same day some (but not even most) of Defendants responded to the Complaint.  *See American Beverage Assoc.* v. *Snyder*, No. 1:11-cv-195, 2011 WL 13128662, at *3 (W.D. Mich. Apr. 26, 2011) (motion to intervene timely where filed shortly after defendants filed an answer).  Since receiving notice of this action, the League sought the advice of counsel, reviewed the pleadings, and determined that the League's interests may not be adequately represented in this action.

Fourth, there is no prejudice to the original parties because the League promptly moved to intervene before all Defendants responded to the Complaint.  *See Hill* v. *Travelers Cas. & Sur. Co.* No. 14-12840, 2015 WL 3440871, at *4 (E.D. Mich. May 28, 2015) (finding no prejudice where intervenors moved with "relative promptness").  Intervention by the League will not alter the timeline upon which this case will be adjudicated.

Finally, there are no unique circumstances that militate against intervention at this early stage of the proceeding.

8

In sum, the League's motion, filed at the "nascent stage of the proceedings," is clearly timely. *Winfrey*, 2020 WL 2781826, at *3. Indeed, motions to intervene are regularly granted at much later stages of litigation. *See, e.g.*, *United States* v. *Kurdziel Iron Indust.*, No. 1:87-cv-394, 1991 WL 239992, at *2 (W.D. Mich. Oct. 16, 1991).

### B. The League Has a Substantial Legal Interest in the Case

The Sixth Circuit "subscribe[s] to a 'rather expansive notion of the interest sufficient to invoke intervention of right.'" *Grutter* v. *Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (quoting *Michigan State AFL-CIO*, 103 F.3d at 1245). Thus, the Sixth Circuit "has acknowledged that 'interest' is to be construed liberally." *Bradley* v. *Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987). For instance, a proposed intervenor is not required to have a "specific legal or equitable interest" in the litigation. *Michigan State AFL-CIO*, 103 F.3d at 1245. A potential intervenor also need not have the same type of standing that is necessary to initiate a lawsuit. *Purnell* v. *City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991). Given this expansive understanding of an interest sufficient to invoke intervention as of right, "close cases should be resolved in favor of recognizing an interest." *Michigan State AFL-CIO*, 103 F.3d at 1247.

This lawsuit implicates the League's substantial legal interest in ensuring that every registered eligible voter in Michigan remains registered and able to exercise his or her constitutional right to vote. "It is beyond cavil that voting is of the most fundamental significance under our constitutional structure." *Burdick* v. *Takushi*, 504 U.S. 428, 433 (1992) (citation omitted). The Supreme Court has long recognized that all aspects of election laws affect, at least to some degree, an individual's right to vote and right to associate for political purposes. *Anderson* v. *Celebrezze*, 460 U.S. 780, 788 (1983).

As a result, courts have recognized an organization's interest in protecting access to the ballot, and have specifically granted intervention in cases where parties seek to protect their

interests in ensuring that eligible, registered voters remain registered and are not wrongfully purged from voter rolls. *See, e.g.*, *Bellitto* v. *Snipes*, No. 16-CV-61474-BLOOM/Valle, 2016 WL 5118568, at *2–3 (S.D. Fla. Sept. 21, 2016) (granting union's motion to intervene where "its interest and the interests of its members would be threatened by the court-ordered 'voter list maintenance' sought by Plaintiffs . . . which [the union] maintains could itself violate the NVRA").

The decision in *Public Interest Legal Foundation, Inc.* v. *Winfrey* is directly on point. *See* 2020 WL 2781826. There, the court permitted the Michigan and Detroit Leagues to intervene in a nearly identical case in which the plaintiff sought to compel Detroit's election officials "to take stronger measures to purge the City's voter rolls." *Id*. at *1. The League sought "to intervene for the purpose of challenging the plaintiff's claims with a view toward ensuring that no unreasonable measures are adopted that could pose an elevated risk of removal of legitimate registrations." *Id*. at *3. The court held that that was a "facially legitimate interest and one that is sufficiently distinct from the interests" of election officials. *Id*.; *see also Kobach* v. *U.S. Election Assistance Com'n*, No. 13-cv-4095, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (permitting the League to intervene because "Applicants have clearly shown their interests in either increasing participation in the democratic process, or protecting voting rights, or both, particularly amongst minority and underprivileged communities").

The League's core mission is to register eligible persons to vote, to assist registered voters in freely casting a ballot, and to strengthen our democracy by ensuring that all eligible persons have the opportunity to register and *remain* registered to vote. In particular, the League works to register and educate voters in communities with persistent registration and participation gaps, including people of color and low-income Americans.

Of acute concern to the League, the purge Plaintiff seeks may result in the deregistration of *eligible* voters.  Any outcome of this litigation that would result in eligible voters' registrations being put at risk by unnecessary, unreasonable, and unlawful purges of Michigan's voting rolls would directly harm the interests of the League and its longstanding efforts to promote and maintain lawful voter registrations, particularly in historically disenfranchised communities.

C.     **The League's Ability to Protect Its Interests Will Be Impaired Absent Intervention**

The League is "so situated that disposing of th[is] action may as a practical matter impair or impede th[eir] ability to protect [their] interest" in protecting the rights of eligible Michigan voters. Fed. R. Civ. P. 24(a)(2).  "To satisfy this element of the intervention test, a would-be intervenor need show only that impairment of its substantial legal interest is *possible* if intervention is denied." *Michigan State AFL-CIO*, 103 F.3d at 1247 (emphasis added).  "This burden is minimal." *Id*.

The League faces the possibility of being seriously impaired in its voter education, assistance, and registration efforts if Plaintiff succeeds in requiring Defendants to unnecessarily purge their voter rolls.  The League's voter education and registration efforts in Michigan would be set back, requiring additional and substantial efforts to overcome any new obstacles to registering, remaining registered, and voting.  As discussed above, the League's mission is to promote voter registration and participation, and it commits substantial time and resources to encouraging civic participation and registering voters. *See Winfrey*, 2020 WL 2781826, at *1.

If Plaintiff forces Defendants to engage in unreasonable voter list maintenance practices, the League would have to spend time and resources to ensure that any erroneously purged voters learn of their removal and re-register in time for the upcoming election.  Faced with a new risk of

11

improper purges, the League would have to educate voters and encourage them to regularly check their registration statuses.  The League would have to devote additional resources to election protection to mitigate any resulting confusion at the polls.  And the League would have to combat disenchantment and confusion among Michigan voters (including League members) that is sure to arise if Defendants are forced to institute voter roll purges based solely on speculative allegations of voter fraud from a partisan Plaintiff and his organizational backers.[2] These new activities would force the League to divert scarce resources, in a presidential election year and amidst a pandemic, from its ordinary and planned activities.

### D.    Defendants Inadequately Represent the League's Interest

Absent the League's intervention, the interests of voters may not be fully advanced and protected in any resolution of the case.  Although there is overlap in the questions of law and fact that Defendants and the League seek to litigate in this case, Defendants may not fully and zealously represent all the interests of the League, its members, and the voters it represents.  A proposed intervenor "is not required to show that the representation will in fact be inadequate." *Michigan State AFL-CIO*, 103 F.3d at 1247.  It is sufficient to show that the original parties' "representation *might* be inadequate." *Grutter*, 188 F.3d at 400.  Thus, the Sixth Circuit has stated that proposed intervenors' "burden in showing inadequacy *is minimal*." *Id*. at 401 (emphases added).

---

[2]    Plaintiff recently sought to use his status as a registered lobbyist and officer for the Clinton County Republican Party and Michigan Republican Party as a basis for challenging the constitutionality of Michigan's Independent Citizens Redistricting Commission.  *See Daunt* v. *Benson*, No. 1:19-cv-00614, ECF No. 1, PageID.5 (W.D. Mich. July 30, 2019).  Mr. Daunt is apparently backed by the "Honest Elections Project" which, although appearing nowhere on the Complaint, has issued a press release taking credit for this action.  *See* Honest Elections Project, *Honest Elections Project Files Lawsuit Against The State Of Michigan To Compel It To Clean Up Its Voter Rolls* (June 9, 2020), https://www.honestelections.org/news/honest-elections-project-files-lawsuit-against-the-state-of-michigan-to-compel-it-to-clean-up-its-voter-rolls/.

The League does not question Defendants' sincere intent to protect the rights of Michigan voters. But Defendants also have other interests, and they do not have the voter-focused mission that the League can bring to bear. By contrast, the League's *only* goal in joining this action is to protect Michigan voters and to ensure the integrity of election administration statewide. And the League's knowledge of Michigan elections practice could benefit the Court and all parties to the case. As discussed above, Defendants do not share the League's interest in ensuring that (1) there is no impact on the League's past and future voter education and registration efforts, and (2) Plaintiff does not establish precedent for other cases against government officials in Michigan founded on baseless and unsubstantiated allegations of violations of the NVRA. *See Kobach*, 2013 WL 6511874, at *4 ("[G]overnment Defendants have a duty to represent the public interest, which may diverge from the private interest of Applicants. As such, the existing Defendants may not adequately represent Applicants' specific interests."). Both of these effects would impact the League, not Defendants, by burdening it with additional work and voter registration efforts, and potentially serious encumbrances to carrying out its mission.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION UNDER RULE 24(B)

Alternatively, the Court should permit the League to intervene under the permissive intervention provisions of Rule 24(b). When ruling on motions to intervene, courts regularly elect to grant permissive intervention without regard to whether an applicant is entitled to intervention as of right. *See, e.g.*, *Johnson*, 902 F.3d at 577 (addressing only arguments on permissive intervention); *Winfrey*, 2020 WL 2781826, at *3. A motion for permissive intervention "is directed to the sound discretion of the district judge." *Meyer Goldberg, Inc. of Lorain* v. *Goldberg*, 717 F.2d 290, 294 (6th Cir. 1983). To permissively intervene, "a proposed intervenor must establish that the motion for intervention is timely and alleges at least one

common question of law or fact." *United States* v. *Michigan*, 424 F.3d 438, 445 (6th Cir. 2005). Once established, the district court will consider the possible undue delay and prejudice to the original parties and any other relevant factors.  *Id*.

For the reasons above, this motion is timely and the League raises common issues of law and fact.  Defendants argue that Plaintiff has failed to state actionable claims; the League, likewise, seeks to intervene to argue that Plaintiff has no claim based on its allegations that Defendants' registration lists have not been adequately maintained.  Another district court granted permissive intervention to the League in an identical case earlier this year. *See Winfrey*, 2020 WL 2781826, at *1.

The League should be permitted to intervene here for the same reasons as intervention was permitted in *Winfrey*. *See* 2020 WL 2781826, at *1

## <u>CONCLUSION</u>

For the foregoing reasons, the League respectfully requests that the Court grant their motion to intervene pursuant to Federal Rule of Civil Procedure 24(a) or, in the alternative, Rule 24(b).

Dated:   September 14, 2020

Respectfully submitted,

BUTZEL LONG

/s/ George B. Donnini
George B. Donnini (P66793)
David F. DuMouchel (P25658)
41000 Woodward Avenue
Stoneridge West Bldg.
Bloomfield Hills, MI  48304
Telephone:     313.225.7004
donnini@butzel.com
dumouchd@butzel.com


BRENNAN CENTER FOR JUSTICE AT NYU
SCHOOL OF LAW

Myrna Pérez (N.Y. Bar No. 4874095)*
Eliza Sweren-Becker (N.Y. Bar No. 5424403)*
Maximillian L. Feldman (N.Y. Bar No. 5237276)*
120 Broadway, Suite 1750
New York, NY 10271
Telephone: 646.292.8310
Facsimile:  212.463.7308
perezm@brennan.law.nyu.edu
sweren-beckere@brennan.law.nyu.edu
feldmanm@brennan.law.nyu.edu


PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Robert A. Atkins (N.Y. Bar No. 2210771)*
William B. Michael (N.Y. Bar No. 4296356)*
Farrah R. Berse (N.Y. Bar No. 4129706)*
Joshua D. Kaye (N.Y. Bar No. 4577219)*
Zack G. Goldberg (N.Y. Bar No. 5579644)*
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:   212.373.3000
Facsimile:    212.757.3990
ratkins@paulweiss.com
wmichael@paulweiss.com
fberse@paulweiss.com

15

jkaye@paulweiss.com
zgoldberg@paulweiss.com

*Attorneys for Proposed
Intervenor-Defendants*

*\*Application for admission forthcoming*

## **CERTIFICATE OF COMPLIANCE**

This document was prepared using Microsoft Word.  The word count for the League's

Brief in Support of Motion to Intervene as provided by that software is 4,283, which is less than

the 4,300-word limit for a brief filed in support of a nondispositive motion.

Respectfully submitted,

BUTZEL LONG

/s/ George B. Donnini
George B. Donnini (P66793)
41000 Woodward Avenue
Stoneridge West Bldg.
Bloomfield Hills, MI  48304
Telephone:    313.225.7004
donnini@butzel.com

*Counsel for Proposed*
*Intervenor-Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I, George B. Donnini, certify that on September 14, 2020, I caused a true and correct copy of the foregoing document to be filed and served electronically via the ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

Respectfully submitted,

BUTZEL LONG

<u>/s/ George B. Donnini</u>
George B. Donnini (P66793)
41000 Woodward Avenue
Stoneridge West Bldg.
Bloomfield Hills, MI  48304
Telephone:    313.225.7004
donnini@butzel.com

*Counsel for Proposed*
*Intervenor-Defendants*