IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ANTHONY DAUNT,<br><br>    Plaintiff,<br><br>    vs.<br><br>JOCELYN BENSON, in her official capacity as Michigan Secretary of State; JONATHAN BRATER, in his official capacity as Director of the Michigan Bureau of Elections,<br><br>    Defendants,<br><br>A. PHILIP RANDOLPH INSTITUTE - DETROIT/DOWNRIVER; RISE, INC.<br><br>    Intervenor-Defendants,<br><br>    and<br><br>LEAGUE OF WOMEN VOTERS OF MICHIGAN; LEAGUE OF WOMEN VOTERS OF GRAND TRAVERSE AREA; LEAGUE OF WOMEN VOTERS OF ANN ARBOR AREA; LEAGUE OF WOMEN VOTERS OF LEELANAU COUNTY; LEAGUE OF WOMEN VOTERS OF COPPER COUNTRY; and LEAGUE OF WOMEN VOTERS OF OAKLAND AREA,<br><br>    Intervenor-Defendants. | Civil Action No. 1:20-cv-522 |

**INTERVENOR-DEFENDANTS' A PHILIP RANDOLPH INSTITUTE - DETROIT/DOWNRIVER AND RISE, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................... 1
II. BACKGROUND ...................................................................................................... 1
III. LEGAL STANDARD ............................................................................................... 2
   A. Motion to Dismiss for Lack of Subject Matter Jurisdiction ............................... 2
   B. Motion to Dismiss for Failure to State a Claim .................................................. 3
IV. ARGUMENT ............................................................................................................ 3
   A. Plaintiff lacks standing ........................................................................................ 3
      1. Plaintiff fails to allege an injury-in-fact ......................................................... 4
      2. Defendants do not cause Plaintiff's alleged injuries ...................................... 9
      3. Plaintiff's alleged injuries are not redressable by a favorable decision ....... 10
   B. Plaintiffs' Complaint fails to state a claim upon which relief can be granted. .. 11
V. CONCLUSION ....................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**  **PAGE(S)**

*Abbott v. Perez*,
  138 S. Ct. 2305 (2018) ............................................................................................. 12

*ACLU v. Nat'l Sec. Agency*,
  493 F.3d 644 (6th Cir. 2007) ................................................................................ 9, 11

*Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*,
  389 F.3d 536 (6th Cir. 2004) ................................................................................... 10

*Am. Civil Rights Union v. Martinez-Rivera*,
  166 F. Supp. 3d 779 (W.D. Tex. 2015) .................................................................. 5, 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................. 3, 12

*Buchholz v. Meyer Njus Tanick, PA*,
  946 F.3d 855 (6th Cir. 2020) ............................................................................ 3, 4, 7

*Carson v. Simon*,
  No. 20-CV-2030, 2020 WL 6018957 (D. Minn. Oct. 12, 2020) ........................ 4, 8, 9

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ..................................................................................................7

*Cook Cnty. Republican Party v. Prtizker*,
  No. 1:20-cv-04676, ECF No. 59 ................................................................................6

*Cotter v. Mass. Ass'n of Minority Law Enf't Officers*,
  219 F.3d 31 (1st Cir. 2000) .......................................................................................9

*Donald J. Trump for President, Inc. v. Boockvar*,
  No. 2:20-cv-966 (W.D. Pa. Aug. 15, 2020) ........................................................... 5, 9

*Donald J. Trump for President, Inc., v. Boockvar*,
  No. 20-cv-966, Slip Op. (W.D. Pa. Oct. 10, 2020) ...................................................5

*Donald J. Trump for President, Inc. v. Bullock*,
  CV 20-66-H-DLC, 2020 WL 5810556 (D. Mont. Sept. 30, 2020) ...........................6

*Donald J. Trump for President, Inc. v. Cegavske*,
  -- F. Supp. 3d --, 2020 WL 5626974 (D. Nev. Sept. 18, 2020) ........................... 4, 8

*Harding v. Edwards*,
  No. 3:20-cv-00495, ECF No. 88 (M.D. La. Sept. 16, 2020) .....................................6

*Howard v. Tennessee*,
  No. 3:16-CV-2829, 2017 WL 4877111 (M.D. Tenn. Oct. 27, 2017), *aff'd*, 740
  F. App'x 837 (6th Cir. 2018) .....................................................................................8

## TABLE OF AUTHORITIES

**CASES**                      **PAGE(S)**

*James v. Meow Media, Inc.*,
  300 F.3d 683 (6th Cir. 2002) ..................................................................................10

*L.G. by & through G.G. v. Bd. of Educ. of Fayette Cnty.*,
  775 F. App'x 227 (6th Cir. 2019) ............................................................................11

*Lyshe v. Levy*,
  854 F.3d 855 (6th Cir. 2017) ....................................................................................2

*Martel v. Condos*,
  -- F. Supp. 3d --, 2020 WL 5755289 (D. Vt. Sept. 16, 2020)................................4, 9

*Mich. All. for Retired Americans et al. v. Benson*,
  No. 20-000108-MM at 16 (Mich. Ct. Cl. Sept. 18, 2020) ........................................5

*One Wis. Inst., Inc. v. Thomsen*,
  198 F. Supp. 3d 896 (W.D. Wis. 2016) ....................................................................5

*Paher v. Cegavske*,
  No. 3:20-cv-00243-MMD-WGC, 2020 WL 2748301 (D. Nev. May 27, 2020) ...............5, 6, 9

*Republican Party of Pa. v. Cortés*,
  218 F. Supp. 3d 396 (E.D. Pa. 2016) ........................................................................9

*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
  78 F.3d 1125 (6th Cir. 1996) ....................................................................................2

*Sokaogon Chippewa Cmty. v. Babbitt*,
  214 F.3d 941 (7th Cir. 2000) ....................................................................................9

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)...........................................................................................3, 4

*Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*,
  552 F.3d 430 (6th Cir. 2008) ....................................................................................3

*United States v. Florida*,
  No. 4:12-cv-285-RH/CAS, 2012 WL 13034013 (N.D. Fla. Nov. 6, 2012)..............9

**STATUTES**

52 U.S.C. § 20510(b)(2) ....................................................................................................3

**OTHER AUTHORITIES**

Rule 12(b)(1)..................................................................................................................2, 3

Rule 12(b)(6)................................................................................................................2, 11

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Rule 15(a)(3) ................................................................................................................... 2

## I.  INTRODUCTION

Although he no longer seeks relief prior to the rapidly approaching November election (presumably because such relief is plainly barred by federal law), Plaintiff Anthony Daunt nonetheless shortly before the election raises speculative and baseless fears of voter fraud, the voter dilution he claims this imagined fraud might cause, and the resources he has allegedly dedicated to combating this boogeyman in an effort to compel Michigan's Secretary of State and the Director of the Michigan Bureau of Elections (collectively "Defendants") to initiate a broad voter purge program. Daunt lacks Article III standing to pursue this claim on multiple bases, and—even if he had standing, which he does not—has failed to allege sufficient facts to make his claim plausible on its face. Intervenors respectfully submit that this Court should dismiss the Complaint in its entirety.

## II.  BACKGROUND

On June 9, 2020, Daunt initiated this action against the Secretary of State of Michigan, the Director of the Michigan Bureau of Elections, and 16 different county clerks. ECF No. 1 at 1 (Complaint). Daunt did not allege that he is a resident of any of these counties, but broadly alleged that he is a Michigan voter, that these counties have inaccurate voter rolls, that these inaccurate rolls dilute his vote, and that his fears about election integrity due to these inaccurate voter rolls burden his right to vote and cause him to spend time and resources. *Id*. ¶¶ 9-11. On July 13, the Court granted the parties' joint stipulation extending the time for Defendants Secretary of State Jocelyn Benson and Director of the Michigan Bureau of Elections Jonathan Brater to respond to the Complaint, until August 31, 2020. ECF No. 12 at 2. On September 16, the Court granted the parties' joint stipulation dismissing the 16 county clerks from this action and providing Daunt the opportunity to file an amended complaint on or before September 30. ECF No. 28 at 1. Daunt filed an amended complaint on September 30 removing the county officials, but otherwise essentially

rehashing his other allegations. *See* ECF No. 31. Notably, Daunt also removed his request for relief prior to the 2020 general election, having acknowledged in earlier briefing to the Court that he no longer intended to seek any such relief. *See* ECF No. 29 at 5 ("Plaintiff decided not to seek interim relief before November . . . .").

On September 11, A. Philip Randolph – Detroit/Downriver and Rise Inc. (collectively, "Intervenors") moved to intervene in this action. *See* ECF No. 19. The League of Women Voters of Michigan, League of Women Voters of Grand Traverse Area, League of Women Voters of Ann Arbor Area, League of Women Voters of Leelanau County, League of Women Voters of Copper Country, and League of Women Voters of Oakland Area (collectively "the League") also sought intervention on September 14. *See* ECF No. 25. Daunt opposed the intervention of both groups, but the Court granted intervention on September 28, directing intervenors and Defendants to file any responses to the amended complaint within the time permitted by Rule 15(a)(3), or in other words on or before October 14. ECF No. 30 at 2.

### III.   LEGAL STANDARD

**A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Whether a party has Article III standing is properly an issue of a court's subject matter jurisdiction under Rule 12(b)(1). *See Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), "where subject matter jurisdiction is challenged under Rule 12(b)(1)[,] ... the plaintiff has the burden of proving jurisdiction in order to survive the motion." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986)) (emphasis omitted).

B.     **Motion to Dismiss for Failure to State a Claim**

When considering a 12(b)(6) motion to dismiss for failure to state a claim, although the Court should presume that all well-pleaded material allegations of the Complaint are true, *see Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted). The court need not accept as true legal conclusions or unwarranted factual inferences. *Total Benefits Planning Agency*, 552 F.3d at 434.

IV.     **ARGUMENT**

A.     **This case should be dismissed under Rule 12(b)(1) for lack of standing.**

This Court lacks jurisdiction because Daunt fails to satisfy the requirements to invoke federal jurisdiction under Article III of the Constitution. While the NVRA allows anyone who is "aggrieved" to bring suit for a violation of the statute, 52 U.S.C. § 20510(b)(2), this does not relieve a plaintiff of the requirement that they demonstrate Article III standing. "Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 820, n.3 (1997)); *see also Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 862 (6th Cir. 2020) ("Congress cannot confer standing on a plaintiff—and thus open the door to federal court—when the plaintiff has not sustained an injury in fact; Article III's standing requirements still apply."). To demonstrate Article III standing, a plaintiff must demonstrate that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,

and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*, 136 S. Ct. at 1547. Daunt fails to satisfy any of these requirements.

1. **Plaintiff fails to allege an injury-in-fact adequate to satisfy Article III.**

Daunt fails to establish even the most basic element of Article III standing because he fails to allege that has suffered an actual injury-in-fact. An injury-in-fact sufficient for Article III standing must be concrete and particularized, as well as actual and imminent, not conjectural or hypothetical. *Id.* at 1548. Daunt's alleged injuries fail to meet these requirements.

a. **Plaintiff's injuries are speculative and hypothetical, not concrete.**

First, Daunt's injuries are not concrete. A concrete injury is, as the name suggests, "real and not abstract." *Buchholz*, 946 F.3d at 861. None of Daunt's allegations involve a real injury, but rather abstract concerns and rank speculation about what might follow as a result. Daunt alleges that Defendants' purported violations of the NVRA "dilute [Daunt's] legitimate vote" based on the theoretical possibility that having a number of ineligible voters on the rolls might allow ineligible voters to vote in Michigan's election. *See* Am. Compl. at ¶ 9. But Daunt alleges no facts to support this, and voter fraud is not simply an incantation he can invoke and make it so.

Courts have repeatedly rejected similar attempts to invoke federal jurisdiction based on speculative concerns that a state's elections procedures may result in voter fraud that then could potentially dilute the power of lawful voters' ballots. *See, e.g., Carson v. Simon*, No. 20-CV-2030 (NEB/TNL), 2020 WL 6018957, at *8 (D. Minn. Oct. 12, 2020) (rejecting "prospect of hypothetical unlawful votes in the upcoming presidential election" as a cognizable or sufficient injury-in-fact to support standing); *Donald J. Trump for President, Inc. v. Cegavske*, -- F. Supp. 3d --, 2020 WL 5626974, at *4 (D. Nev. Sept. 18, 2020) (finding plaintiffs' vote dilution theory too speculative to confer standing); *Martel v. Condos*, -- F. Supp. 3d --, 2020 WL 5755289, at *4 (D. Vt. Sept. 16, 2020) (concluding plaintiffs' vote dilution theory amounted to a generalized

grievance and could not confer standing); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2748301, at *4 & n.12 (D. Nev. May 27, 2020) (finding plaintiffs "fail to more than speculatively connect the specific conduct they challenge . . . and the claimed injury [of] . . . disenfranchisement through vote dilution" and such lack standing); *Am. Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 789, 802–03 (W.D. Tex. 2015) (rejecting standing argument where alleged injuries, "undermined voter confidence and the risk of vote dilution, are speculative"); *see also Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-cv-966 (W.D. Pa. Aug. 15, 2020) (ECF Nos. 374, 381) (failing to produce any significant evidence of voter fraud after being compelled to do so); *One Wis. Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 912 (W.D. Wis. 2016) (noting that "there is utterly no evidence that [there] is a systematic problem" of multiple voting).

Daunt seeks (and fails) to overcome this fatal flaw in his Amended Complaint by quoting various courts saying that voter fraud is theoretically possible, and baselessly asserting that Michigan has voter fraud but just does a bad job of detecting it, implicitly acknowledging the dearth of evidence regarding its existence. Am. Compl. ¶¶ 23-26. This does not fix his problem. Most notably, it is not meaningfully different than the allegations that have supported complaints that courts have repeatedly found insufficient for Article III purposes. *See supra*. At this point, moreover, it is also not credible. Daunt's contention that Michigan must have voter fraud but simply has not detected it has itself been repeatedly rejected by courts that have found the opposite, including specifically in Michigan. *See Mich. All. for Retired Americans et al. v. Benson, et al.*, No. 20-000108-MM at 16 (Mich. Ct. Cl. Sept. 18, 2020) ("The documentary evidence in this case reveals that the incidences of voter fraud and absentee ballot fraud are minimal and that the fears of the same are largely exaggerated."); *see also, e.g.*, *Donald J. Trump for President, Inc., v.*

*Boockvar*, No. 20-cv-966, Slip Op. at 108 (W.D. Pa. Oct. 10, 2020) (ECF No. 574) ("Plaintiffs present only the possibility and potential for voter fraud," relying only on "hypotheticals, rather than actual events."); *Donald J. Trump for President, Inc. v. Bullock*, CV 20-66-H-DLC, 2020 WL 5810556, at *12, 14 (D. Mont. Sept. 30, 2020) (finding plaintiffs did not introduce "even an ounce" of evidence supporting their vote dilution and voter fraud claims); *Cook Cnty. Republican Party v. Prtizker*, No. 1:20-cv-04676, ECF No. 59 at (N.D. Ill. Sept. 17, 2020) (noting "isolated incidents cited [by the Plaintiffs] lend support to the proposition that over time voter fraud rates have remained infinitesimally small") (quotations omitted); *Harding v. Edwards*, No. 3:20-cv-00495, ECF No. 88 at 22-24 (M.D. La. Sept. 16, 2020) (explaining "Defendants' evidence [of voter fraud] is woefully inadequate"); *Paher*, 2020 WL 2089813, at *6 & n.10 (finding "claim of voter fraud is without any factual basis"). Indeed, even the Heritage Foundation, an organization built "to formulate and promote conservative public policies" which has dedicated time and resources to compiling evidence of voter fraud nationally (including Michigan specifically), has come up essentially empty.[1] The organization has only identified 14 instances of election-related fraud in the last 13 years, and the single recorded instance related to ineligible voting occurred 12 years ago. The Heritage Foundation, Election Fraud Cases, https://www.heritage.org/voterfraud/search?state=MI (last accessed on Oct. 13, 2020). There is simply nothing to elevate this beyond conjecture and speculation, and Daunt's attempts to do so fail. These allegations are hardly concrete.

Even assuming that there were undetected fraud in Michigan, Daunt both fails to connect his vague specter of undetected fraud with the issue before the Court, and ignores that even if there

---

[1] *See* The Heritage Foundation, About Heritage, https://www.heritage.org/about-heritage/mission (last accessed Oct. 13, 2020).

were the potential for fraud, several speculative events would have to occur before Daunt were to actually suffer the vote dilution injury he fears as a result. First, Daunt's fears that fraudulent voting activity may take place would have to actually take place. Second, the number of those fraudulent voters who cast ballots for candidates that Daunt does not prefer would have to outweigh those who cast ballots for voters he does prefer. If the balance fell the other way, then the impact would actually be to inflate the power of Daunt's vote, and he would suffer no injury at all.

Daunt also cannot perform this alchemy merely because he chooses to spend time and money based on unsupported (and unsupportable) speculation of future harm from purported voter fraud. Daunt alleges that Defendants' failure to maintain their voter rolls force him to "spend more of his time and resources monitoring Michigan elections for fraud and abuse, mobilizing voters to counteract it, educating the public about election-integrity issues, and persuading elected officials to improve list maintenance," as well as on "get-out-the vote efforts for like-minded individuals." Am. Compl. ¶ 11. But a "plaintiff cannot create an injury by taking precautionary measures against a speculative fear," including by spending time or money to combat these speculative concerns. *Buchholz*, 946 F.3d at 865; *see also Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 416 (2013) (noting a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"). Both Daunt's alleged fear of purported voter fraud and his time and money spent to combat it suffer from the same fatal flaw: they flow from unfounded and baseless speculation. Neither allegation morphs Daunt's speculative injury into a concrete one.

        **b.**    **Plaintiff's injury is not particularized.**

Daunt's alleged injury is also not particularized. Daunt is a self-identified registered Republican voter in Michigan, and he argues that because Michigan does not maintain its voter rolls, he "reasonably fears" that ineligible voters "can and do" vote in Michigan elections, and that

those votes "dilute [his] legitimate vote." Am. Compl. ¶ 9. But Daunt has suffered no individualized injury; "[r]ather, he casts his suit as one to address the state's broader failure" to maintain its voter rolls; if this constitutes an injury, it is one that applies to all eligible voters *in the entire state* and is not the "specific injury-in-fact that warrants the exercise of a federal court's subject matter jurisdiction." *Howard v. Tennessee*, No. 3:16-CV-2829, 2017 WL 4877111, at *5 (M.D. Tenn. Oct. 27, 2017), *aff'd*, 740 F. App'x 837 (6th Cir. 2018). Daunt has not pled facts to support his allegation that Michigan's voter rolls have affected him "in a personal and individual way." *Id*. at *6 (quoting *Spokeo, Inc.*, 136 S. Ct. at 1548).

Indeed, just last month a district court in Nevada dealt with a remarkably similar allegation that Nevada's expansion of voting opportunities caused vote dilution for a political party and its members, and correctly dismissed it for lack of standing given the generalized nature of the exact type of grievance Daunt asserts here. *See Donald J. Trump for President, Inc.*, 2020 WL 5626974 at *4. The court wrote that "claims of a substantial risk of vote dilution 'amount to general grievances that cannot support a finding of particularized injury as to [p]laintiffs.'" *Id.* (quoting *Paher*, 2020 WL 2748301, at *4)). The court noted that, like Daunt, the plaintiffs in that action "never describe how their member voters will be harmed by vote dilution where other voters will not," and that the plaintiffs sought relief that "no more directly and tangibly benefits [them] than it does the public at large." *Id.* The court concluded the broad assertions of vote dilution are "'precisely the kind of undifferentiated, generalized grievance about the conduct of government' that fail to confer Article III standing." *Id*. (quoting *Lance v. Coffman*, 549 U.S. 437, 442 (2007)). A federal district court in Minnesota came to the same conclusion earlier this week. *See Carson*, 2020 WL 6018957, at *8.

Both of these decisions, moreover, are consistent with a long line of opinions issued by federal courts across the country, all of whom agree that vote dilution allegations, in the same context of those made here, are speculative and generalized, and do not rise to the level of injury-in-fact required by Article III. Daunt requests the same broadly applicable relief, and his claims should similarly be dismissed. Indeed, the raft of case law supporting this conclusion is, simply, overwhelming.[2]

### 2. Plaintiff cannot satisfy Article III's causation requirement.

Even assuming *arguendo* that Daunt's alleged injury is cognizable, he has not and cannot fairly or accurately—in other words, plausibly—claim that Defendants' actions caused them. Federal plaintiffs "must allege some threatened or actual injury *resulting from the putatively illegal action* before a federal court may assume jurisdiction." *ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 666 (6th Cir. 2007) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42, (1976)). That is, Daunt must assert "a fairly traceable connection between [his] injury and the complained-of conduct." *Id.* at 659. "The causation requirement of the constitutional standing doctrine exists

---

[2] *See, e.g.*, *Carson*, 2020 WL 6018957, at *8 (rejecting standing because vote dilution claim "is a paradigmatic generalized grievance" and alleged voter confusion "is speculative at best"); *Boockvar*, No. 20-cv-966, Slip Op. at 60-63 (rejecting standing because allegations of voter fraud are too speculative); *Martel*, 2020 WL 5755289, at *4 (D. Vt. Sept. 16, 2020) ("If every voter suffers the same incremental dilution of the franchise caused by some third-party's fraudulent vote, then these voters have experienced a generalized injury."); *Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 407 & n.4 (E.D. Pa. 2016) (rejecting motion for preliminary injunction because threat of voter fraud was nothing more than "speculation"); *see also Cotter v. Mass. Ass'n of Minority Law Enf't Officers*, 219 F.3d 31, 34 (1st Cir. 2000) (noting interests required for intervention and standing often overlap based on the common goals of the doctrines); *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000) (same); *Paher*, 2020 WL 2089813, at *4-*5 ("But Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter. Such claimed injury therefore does not satisfy the requirement that Plaintiffs must state a concrete and particularized injury."); *Am. Civil Rights Union*, 166 F. Supp. 3d at 789; *United States v. Florida*, No. 4:12-cv-285-RH/CAS, 2012 WL 13034013, at *1 (N.D. Fla. Nov. 6, 2012) (rejecting organization's motion to intervene premised on interest in preventing voter fraud because its "asserted interests are the same . . . as for every other registered voter in the state").

to eliminate those cases in which a third party and not a party before the court causes the injury." *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 542 (6th Cir. 2004) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

First, it is black letter tort law that "[g]enerally, a third party's criminal action . . . break[s] the chain of causation" and that is fatal to Daunt's claim here. *James v. Meow Media, Inc.*, 300 F.3d 683, 699 (6th Cir. 2002). Daunt's claimed injuries all flow from purported vote dilution based on ineligible voters voting and diluting Daunt's legitimate vote. Even assuming this had any basis in fact (and it does not), the causal chain between Defendants' actions and Daunt's injuries requires the criminal action of third parties. This criminal action makes it impossible to say that *Defendants* cause Daunt's alleged harm.

For similar reasons, Daunt's claim that Defendants are responsible for his purported concerns about the integrity of elections and his need to spend more time and resources "monitoring Michigan elections for fraud and abuse" are insufficient. Am. Compl. ¶ 11. It is the actions of unidentified (and illusory) third parties committing voter fraud that give Daunt concerns about election integrity and cause him to dedicate time and resources to combating this fraud. In the same way that Defendants do not cause any purported voter fraud, they also do not make it necessary for Daunt to engage in his efforts. Daunt has failed to provide anything more than a conclusory assertion about how Defendants have made Daunt feel the need to prevent hypothetical, future fraudulent voters from engaging in criminal conduct. That is not sufficient to explain how Defendants' conduct causes this purported injury. Since no "party before the court cause[d] the injury," Daunt fails to demonstrate standing. *Am. Canoe Ass'n*, 389 F.3d at 542.

### 3.    Plaintiff fails to satisfy Article III's redressability requirement.

For similar reasons, Daunt cannot allege that his sought-after relief would redress his purported injuries. "Redressability is a likelihood that the requested relief will redress the alleged

-10-

injury." *ACLU*, 493 F.3d at 659 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)) (quotations omitted). Daunt fails to explain or even allege that his requested relief will cure his alleged vote-dilution, ideological, and resource injuries. *See* Am. Compl. at 16-17 (requesting injunctions "requiring Defendants to fully comply with any existing procedures that Michigan has in place to ensure ineligible voters are identified and removed from the rolls," and an "injunction requiring Defendants to develop and implement additional reasonable and effective registration list-maintenance programs to cure their failure to comply with section 8 of the NVRA and to ensure that ineligible registrants are not on the voter rolls").

First, since Daunt has nowhere identified which of the identified sub-groups of Michigan voters he belongs to is having their votes diluted (a fatal flaw for another reason here, *see infra* at Section IV.B), it is impossible for Daunt to allege that the relief he has requested would remedy this dilution. Similarly, Daunt has not explained how any injunction would cause him to no longer have a need to engage in his efforts to monitor for voter fraud or lessen his concerns about such fraud occurring. Thus, it is not "likely" that his requested relief would "redress the alleged injury." *ACLU*, 493 F.3d at 659.

For all of the reasons above, Daunt has failed to meet his "burden of establishing jurisdiction," so he cannot "survive the motion against him." *L.G. by & through G.G. v. Bd. of Educ. of Fayette Cnty.*, 775 F. App'x 227, 229 (6th Cir. 2019). Daunt's Complaint should be dismissed for lack of standing.

**B.    The case should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.**

Even assuming *arguendo* that vote dilution is an Article III injury in this context, the Complaint must still be dismissed because Daunt has not alleged sufficient facts to plead a vote dilution injury. Daunt alleges he is a registered voter in Michigan who votes for and supports

-11-

Republican candidates. Am. Compl. ¶ 10. But he fails to allege that the purported ineligible voters are voting against his interests. Indeed, he appears to believe that *any* ineligible voters who vote dilute the strength of his vote, stating that his "vote is diluted, and his confidence undermined, no matter which political party or candidate the ineligible individuals vote for." *Id.* at ¶ 9.

But that cannot be, or at least its fails to state a claim for vote dilution. Identifying which group is purportedly having its votes diluted is the *sine qua non* for a vote dilution claim. *See Abbott v. Perez*, 138 S. Ct. 2305, 2331 (2018) (noting to make out a vote dilution injury in the redistricting context a plaintiff must prove that, under the totality of the circumstances, the district lines dilute the votes of the members of the minority group whose voting power is purportedly diluted). Daunt cannot broadly say that all eligible voters are having their voted diluted, as he purports to, because all eligible voters are not an identifiable group with an identifiable associational interest whose voting power can be diluted. The closest Daunt comes to pleading a vote dilution claim is the broad contentions that he belongs to the subgroup of Republican voters, but he has not pled any facts to suggest that the purported ineligible voters are *not also* Republican voters, such that any alleged ineligible voting might actually enhance rather than dilute Daunt's vote. The failure to include any such allegations requires dismissal of the Complaint for failure to state a claim. *See Twombly*, 550 U.S. at 570 (holding a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face").

## V.     CONCLUSION

For the foregoing reasons, Intervenors respectfully request that the Court Dismiss Plaintiff's Amended Complaint.

|  |  |
|---|---|
| Dated:  October 14, 2020 | By: /s/ Sarah S. Prescott |

                                              Sarah S. Prescott, (P70510)
SALVATORE PRESCOTT PORTER & PORTER, PLLC
105 E. Main Street
Northville, MI 48168
Telephone: (248) 679-8711
prescott@sppplaw.com

Marc E. Elias
Emily R. Brailey
John M. Geise
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (201) 654-6211
melias@perkinscoie.com
ebrailey@perkinscoie.com
jgeise@perkinscoie.com
tbishop@perkinscoie.com

Kevin J. Hamilton
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
khamilton@perkinscoie.com

*Attorneys for Intervenor-Defendants*

## CERTIFICATE OF SERVICE

     I hereby certify that on October 14, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing of the foregoing document as well as via US Mail to all non-ECF participants.

Dated:  October 14, 2020                                  By: /s/ Sarah S. Prescott

                                                                  Sarah S. Prescott, (P70510)
                                                                  SALVATORE PRESCOTT PORTER & PORTER, PLLC
                                                                  105 E. Main Street
                                                                  Northville, MI 48168
                                                                  Telephone: (248) 679-8711
                                                                  prescott@spplaw.com

                                                                  *Attorneys for Intervenor-Defendants*